IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3165-D

PAUL SCINTO, SR., )
)
        Plaintiff, )
)
v. ) **ORDER**
)
FEDERAL BUREAU OF PRISONS, )
et al., )
)
        Defendants. )

On February 28, 2008, in the District of Columbia, Paul Scinto, Sr., ("Scinto" or "plaintiff") filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) [D.E. 1]. On March 30, 2009, the United States District Court for the District of Columbia granted in part defendants' motion to dismiss or to transfer venue [D.E. 13–14], dismissed defendants the Bureau of Prisons, Lappin, and White, and transferred plaintiff's claims against defendants Stansberry, McClintock, and Holt in their individual capacities to this district [D.E. 25]. On April 10, 2009, plaintiff appealed [D.E. 27]. On February 17, 2010, the United States Court of Appeals for the District of Columbia Circuit affirmed [D.E. 33]. On September 16, 2010, the District of Columbia transferred the action to this district [D.E. 34].

On June 9, 2011, Magistrate Judge William A. Webb entered a scheduling order [D.E. 38]. On June 27, 2011, Scinto filed a motion to clarify the scheduling order relating to discovery [D.E. 42]. On June 30, 2011, Scinto filed a motion for a scheduling conference [D.E. 44]. On July 7, 2011, Scinto filed a motion for names and addresses of witnesses [D.E. 45]. On August 1, 2011, the remaining defendants filed a motion to dismiss [D.E. 46] and a motion to stay discovery pending

resolution of the motion to dismiss [D.E. 48]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Scinto about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 51]. On August 1, 2011, Scinto filed a motion to amend the complaint [D.E. 52]. On August 17 and October 31, 2011, Scinto filed responses in opposition to the motion to dismiss [D.E. 53–54]. As explained below, the court grants defendants' motion to stay discovery and motion to dismiss, and denies plaintiff's motions.

I.

A.

The court first addresses Scinto's motion to amend his complaint. Scinto cites Federal Rule of Civil Procedure 15(a)(2), which provides that the court "should freely give leave [to amend] when justice so requires." However, "belated claims which change the character of litigation are not favored." Smith v. Angelone, 111 F.3d 1126, 1134 (4th Cir. 1997) (internal quotations, alteration, and citation omitted). Additionally, the court is not required to grant a plaintiff leave to amend when "the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quotation omitted).

The allegations of plaintiff's original and amended complaints span from October 18, 2002, when Scinto began his term of incarceration, until March 1, 2007, when Scinto was released from custody to a halfway house. See Compl. [D.E. 1] 4–7; Am. Compl. [D.E. 52] 2–5. Scinto offers no justification for waiting until August 1, 2011, to seek to amend his complaint. Moreover, his proposed amendments are futile. Scinto seeks to add two additional defendants—a doctor and a transportation officer at Butner—whose actions Scinto alleges "**may [have] rise[n]** to the level of deliberate indifference[.]" Am. Compl. 7 (emphasis added). To state a Bivens claim for deliberate indifference, however, "a plaintiff must show both (1) a serious deprivation of a basic human need;

2

and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The Supreme Court has explained that the first prong is an objective one—the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'"—and the second prong is subjective—the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" Id. (second alteration in original) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Thus, Scinto's allegation that the proposed additional defendants "may" have acted with the requisite state of mind is insufficient to state a constitutional violation. Additionally, to the extent Scinto asserts violations of various treaties, such as the Universal Declaration of Human Rights ("the Declaration"), or the "U.N. Minimum Rules for the Treatment of Prisoners[,]" Am. Compl. 10, such treaties have no bearing on whether Scinto has suffered a violation of his rights contained in the United States Constitution. See, e.g., Sosa v. Alvarez-Machain, 542 U.S. 692, 734 (2004) (rejecting FTCA claim alleging "arbitrary arrest" in violation of the Declaration because "the Declaration does not of its own force impose obligations as a matter of international law"); Serra v. Lappin, 600 F.3d 1191, 1196 (9th Cir. 2010); Ajaj v. Fed. Bureau of Prisons, No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *8 n.9 (D. Colo. Mar. 10, 2011). Finally, Scinto's new allegations fail to meet the requirements of notice pleading. See Fed. R. Civ. P. 8. Scinto has failed to give defendants notice of his claims or the factual basis upon which they rest. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Scinto also has failed to meet his burden of identifying which named defendants are responsible for violating his rights or their specific actions. See id. Thus, Scinto has failed to state a claim upon which relief can be granted.

B.

Next, the court addresses plaintiff's discovery-related motions [D.E. 42, 44–45] and

3

defendants' motion to stay discovery [D.E. 48]. Defendants have raised the defense of qualified immunity. Mem. Supp. Mot. Dismiss [D.E. 47] 7–11.

A ruling on a defendants' claim of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). The defense of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see Harlow v. Fitzgerald, 457 U.S. 800, 817–18 (1982). Accordingly, defendants are entitled to resolution of their defense of qualified immunity before being subject to the burdens of litigation, including discovery. See, e.g., Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987); Harlow, 457 U.S. at 817–18; Lescs v. Martinsburg Police Dep't, 138 F. App'x 562, 564 (4th Cir. 2005) (per curiam) (unpublished). Therefore, the court grants defendants' motion to stay, and denies plaintiff's motions.

C.

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569–70 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), cert. granted, 131 S. Ct. 3059 (2011); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 129 S. Ct. at 1949–50.

Similarly, a court need "not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The relevant allegations of Scinto's complaint as to the remaining defendants (Holt, McClintock, and Stansberry) are as follows. On August 24, 2005, Scinto was locked in his dormitory for several hours without water. Compl. ¶ 17; see Pl.'s Mem. Opp'n Mot. Dismiss [D.E. 53] 3. During the lockdown, Scinto "experienc[ed] an episode of acute cholelithiasis which manifested itself in severe abdomen pain, and . . . vomiting" and "used the inmate accessible emergency phone in an attempt to get help." Compl. ¶ 18. Holt responded to the emergency call, and, "on the direct order of . . . McClintock," gave Scinto an incident report rather than providing him with medical assistance. Id. ¶ 19 & Ex. 3 (copy of incident report). As a result of the incident report, Scinto was transferred to the Special Housing Unit ("SHU") for approximately five months. Id. ¶ 27. Ultimately, Scinto was not convicted of any disciplinary infraction as a result of the incident report. Pl. Aff. [D.E. 53-1] ¶ 8. Stansberry is the Warden of the Low Security Federal Correctional Institution at Butner, and was somehow "involved" in Scinto's transfer to the SHU. Compl. ¶ 6 & Ex. 5 (tort claim submitted by Scinto). Scinto asserts that "Stansberry and McClintock failed to provide proper medical treatment for the Plaintiff in that they failed to have Plaintiff treated for Hepatitis C; failed to properly treat the Plaintiff for diabetes; and failed to provide the Plaintiff with adequate care for his damaged legs"; and "caused the disabled Plaintiff to be forced to work at jobs that caused further damage to the Plaintiff's physical disabilities . . . not withstanding an

5

orthopedic doctor's . . . recommendation not to do so." Pl.'s Mem. Opp'n Mot. Dismiss 3; Pl. Aff. ¶ 5.

Defendants argue that Scinto has failed to exhaust his administrative remedies. Mem. Supp. Mot. Dismiss 4–7. The Bureau of Prisons ("BOP") provides a four-step, sequential administrative process to address prisoner complaints. See 28 C.F.R. §§ 542.13–.15.

> First, an inmate normally must present his complaint informally to prison staff using a BP-8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison Warden using a BP-9 form. The BP-8 and BP-9 forms are linked. Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP-9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP-10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP-11 form. Id.

Hill v. Haynes, 380 F. App'x 268, 269 n.1 (4th Cir. 2010) (per curiam) (unpublished). Section 1997e(a) requires an inmate to exhaust his administrative remedies before filing suit. See 42 U.S.C. § 1997e(a); Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004); Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir. 2003).

In opposition, Scinto states that "the Administrative Remedy Procedure was consistently denied to the Plaintiff while incarcerated at the Butner Prison Complex and therefore the Administrative Remedy Procedure was not made available to the Plaintiff—thereby rendering the exhaustion of the Administrative Remedy Procedure an impossibility in the instant case." Pl.'s Mem. Opp'n Mot. Dismiss 8; see also Pl. Aff. ¶ 6 & Exs. 14–20 (copies of grievances). In light of Scinto's evidence, the court declines to dismiss the complaint for failure to exhaust administrative remedies. See Hill, 380 F. App'x at 270.

Next, defendants assert that they are entitled to qualified immunity. Mem. Supp. Mot.

6

Dismiss 7–11. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Pearson v. Callahan, 555 U.S. 223, 231–32 (2009).

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Pearson, 555 U.S. at 232; Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010), cert. denied, 131 S. Ct. 392 (2010); Unus v. Kane, 565 F.3d 103, 123 & n.24 (4th Cir. 2009), cert. denied, 130 S. Ct. 1137 (2010); Miller v. Prince George's Cnty., Md., 475 F.3d 621, 626–27 (4th Cir. 2007). First, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. Second, the court must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (alterations omitted) (quotation omitted). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id. Courts have discretion to decide which prong to address first. Pearson, 555 U.S. at 236. Thus, defendants are entitled to summary judgment on qualified immunity grounds if the answer to either question is "no." See, e.g., al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009).

The evidence, viewed in the light most favorable to Scinto, does not establish a violation of

7

the Eighth Amendment. As for Scinto's claim concerning being on lockdown without access to water, the court analyzes the claim under the Strickler standard. See Strickler, 989 F.2d 1379. Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Helling v. McKinney, 509 U.S. 25, 36 (1993); Hudson v. McMillian, 503 U.S. 1, 8–9 (1992). Scinto's allegations of being on lockdown without access to water for a few hours fall short of a claim of objectively extreme deprivations. See Lopez v. Robinson, 914 F.2d 486, 491–92 (4th Cir. 1990) (finding no Eighth Amendment violation during prison lockdown in which inmates were denied running water for 12 to 24 hours); McGee v. Pallito, No. 1:10-CV-11, 2011 WL 6291954, at *13 (D. Vt. Aug. 3, 2011) (unpublished), report and recommendation adopted, 2011 WL 6294202 (D. Vt. Dec. 15, 2011) (unpublished); Hazel v. Bell, No. 9:08CV216, 2010 WL 1038743, at *25 (E.D. Tex. Jan. 8, 2010) (unpublished), report and recommendation adopted, 2010 WL 1038733 (E.D. Tex. Mar. 18, 2010) (unpublished).

Moreover, Scinto fails to allege that any defendant ordered the lockdown for any reason other than a legitimate penological interest, or with any knowledge that Scinto would experience an acute attack of cholelithiasis. Thus, Scinto fails to allege that any defendant acted with the subjective intent necessary to violate the Eighth Amendment. See, e.g., Farmer v. Brennan, 511 U.S. 825, 837 (1994); Bell v. Wolfish, 441 U.S. 520, 540 (1979). Therefore, defendants are entitled to qualified immunity.

To the extent that Scinto challenges his transfer to the SHU, he also fails to state a claim for a constitutional violation. A prisoner has no right to a specific custody classification, to a transfer, to a non-transfer, or to work release. See, e.g., O'Bar v. Pinion, 953 F.2d 74, 82–83 (4th Cir. 1991). Therefore, defendants are entitled to qualified immunity.

Finally, as for Scinto's attempt to hold Stansberry and McClintock responsible for his

8

medical care and prison job assignment, "[i]n a Bivens suit, there is no respondeat superior liability. Instead, liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (citation omitted); Iqbal, 129 S. Ct. at 1949 ("In a . . . Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Scinto makes no plausible allegations that these defendants were directly involved in his medical care or work assignment, and thus improperly seeks to proceed against them in their supervisory capacities. Therefore, defendants are entitled to qualified immunity.

III.

For the reasons stated, the court GRANTS defendants' motions to stay discovery and to dismiss [D.E. 46, 48], and DENIES plaintiff's motions [D.E. 42, 44–45, 52]. The Clerk of Court shall close the case.

SO ORDERED. This 27 day of December 2011.

JAMES C. DEVER III
Chief United States District Judge

9

Case 5:10-ct-03165-D Document 55 Filed 12/27/11 Page 9 of 9